IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| ALMA D. ADDISON and TERRANCE ADDISON, EXECUTORS OF THE ESTATE OF JOSEPH ADDISON,<br><br>Plaintiffs,<br><br>v.<br><br>KAREN DICKERSON; DEPARTMENT OF THE TREASURY; THE INTERNAL REVENUE SERVICE; and THE DEPARTMENT OF JUSTICE,<br><br>Defendants. | CIVIL ACTION NO.: 4:22-cv-145 |

**O R D E R**

This matter comes before the Court on Plaintiffs'[1] Motion to be Discharged from Liability, Dismissed as a Party, and for the Award of Attorney Fees and Costs. (Doc. 19.) Relatedly, Plaintiffs and Defendants Department of the Treasury, the Internal Revenue Service, and the United States Department of Justice (collectively "the Government Defendants") have jointly moved for default judgment against Defendant Karen Dickerson. (Doc. 20.) For the reasons set forth below, the Court **GRANTS** Plaintiffs' Motion to be Discharged, (doc. 19), and the Joint Motion for Default Judgment, (doc. 20).

BACKGROUND

Plaintiffs filed this action in interpleader as the representatives of the estate of Joseph Addison, a deceased former resident of Chatham County, Georgia. (Doc. 1.) In their Petition for

---

[1] While Plaintiffs described themselves as "Petitioners" on several pleadings and named some of the other parties "Respondents," the correct nomenclature for this action is "Plaintiffs" and "Defendants." See 28 U.S.C. § 2361; Fed. R. Civ. P. 22.

Interpleader, Plaintiffs state that Joseph Addison, who is now deceased, previously resided in Chatham County, Georgia. (Id. at p. 1.) As part of their representation of the estate, Plaintiffs conducted a non-judicial foreclosure sale of real property owned by Karen Dickerson due to Dickerson having defaulted on a promissory note she executed in favor of Joseph Addison. (Id. at p. 3.) Plaintiffs averred that the foreclosure sale resulted in an excess of $40,913.13 after satisfaction of the promissory note. (Id.) However, the United States Department of Treasury recorded two federal tax liens against Dickerson for unpaid 1040 taxes to the Internal Revenue Service ("IRS") totaling $64,169.99. (Doc. 1-3.) After the filing of the tax liens, the United States Department of Justice recorded a lien for fines and restitution against Dickerson totaling $645,015.15. (Doc. 1-4.) Thus, Plaintiffs filed this action requesting that Dickerson and the Government Defendants be required to file pleadings regarding their rights to the excess funds and that the Court determine the Defendants' respective entitlement to the funds. (Doc. 1, p. 4.)

The Government Defendants jointly filed an Answer to the Petition through which they claimed that the IRS tax liens attached to the property and take precedence over Dickerson's interest and that the tax liens also take precedence over the restitution lien because the tax liens were recorded first. (Doc. 10, pp. 3–4.) Thus, the Government Defendants requested that the interpleaded funds be paid to the IRS. (Id. at p. 4.)

On July 20, 2022, Dickerson was served with a copy of Plaintiff's Petition at FCI Aliceville in Aliceville, Alabama, where she is serving a criminal sentence imposed by this Court. (See doc. 9.) However, Dickerson has never filed a response to the Petition or otherwise appeared in this action. Accordingly, on October 7, 2022, the Clerk of Court made an entry of default against Dickerson. (Doc. 17.)

On October 4, 2022, the Court ordered Plaintiffs to pay $41,257.19 (the excess funds plus an additional $344.06 in unearned insurance premiums) into the registry of the Court. (Doc. 14.) Plaintiffs complied, and the interpleaded funds are being held by the Court. (Doc. 15.)

On October 24, 2022, Plaintiffs filed a Motion to be Discharged from Liability, Dismissed as a Party, and for the Award of Attorneys' Fees and Costs. (Doc. 19.) Plaintiffs argued that they were entitled to an order discharging them from liability for any claims related to the funds and that they are entitled to an award of fees and costs. (Id. at pp. 5–7.) On December 30, 2022, Plaintiffs and the Government Defendants filed a Joint Motion for Default Judgment and Motion for Disbursement of Funds. (Doc. 20.) Therein, they requested that the Court enter default judgment against Dickerson, that the IRS be awarded $39,383.26 of the interpleaded funds and that Plaintiffs be awarded $1,873.93 of the funds for attorneys' fees. (Id. at p. 3.)

## DISCUSSION

Federal Rule of Civil Procedure 55 establishes a two-step procedure for a party to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after receiving the clerk's default, the court can enter a default judgment provided the defendant is not an infant or incompetent. Fed. R. Civ. P. 55(b)(2). However, the clerk's entry of default does not automatically warrant entry of default judgment. "[T]hree distinct matters emerge as essential in considering any default judgment: (1) jurisdiction; (2) liability; and (3) damages. Before the Court can grant [a] plaintiff's motion for default judgment, all three must be established." Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004). Thus, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in

3

the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007); see also Eagle Hosp. Physicians v. SRG Consulting, 561 F.3d 1298, 1307 (11th Cir. 2009).

When assessing liability upon a motion for default judgment, the Court must employ the same standard as when addressing a Rule 12(b)(6) motion to dismiss for failure to state a claim. Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015) ("Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim."). Thus, on a motion for default judgment, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

On a motion for default judgment, "[d]amages may only be awarded if the record adequately reflects the basis for the award through a hearing or detailed affidavits establishing the necessary facts." Carrier v. Jordaan, 746 F. Supp. 2d 1341, 1352 (S.D. Ga. 2010) (citing Bardfield v. Chisholm Prop. Circuit Events, LLC, No. 3:09cv232, 2010 WL 2278461, at *7 (N.D. Fla. May 4, 2010)). Awarding money damages is not appropriate "without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation." Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538, 1543 (11th Cir. 1985). "While '[a]n evidentiary hearing is not a *per se* requirement,' the Eleventh Circuit [Court of Appeals] has made clear that 'such hearings are required in all but limited circumstances, as when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages.'" Jordaan,

4

746 F. Supp. 2d at 1352 (quoting SEC v. Smyth, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) (internal quotations omitted)).

I.   **Jurisdiction**

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question.[2] Plaintiffs filed this action to establish priority of the Government Defendants' various liens which are established by federal law. See Principal Life Ins. Co. v. Smith, 385 F. App'x 878, 879 n.1 (11th Cir. 2010) ("The district court had jurisdiction [over the interpleader petition] under 28 U.S.C. § 1331, in that the case relates to an ERISA plan. Thus, the case arises under the laws of the United States and raises a federal question."); United States v. Ben F. Blanton Const., Inc., No. 4:02CV1902 HEA, 2003 WL 23353493, at *1 (E.D. Mo. Dec. 11, 2003) (interpleader action raised a federal question because it involved United States' claim that arose under Internal Revenue Code). Additionally, Congress has waived the United States' sovereign immunity as to interpleader suits concerning property on which the United States has or claims a lien. 28 U.S.C. § 2410(a)(5).

Also, Dickerson is subject to the Court's personal jurisdiction. Plaintiffs assert Dickerson is domiciled in Chatham County, Georgia. Indeed, Dickerson may still be a resident of Georgia despite her incarceration in Alabama. See Collado v. Cancel, No. CA 9:10-1870-MBS-RSC, 2010 WL 4038799, at *2 (D.S.C. Sept. 3, 2010), *report and recommendation adopted*, No. CA 9:10-1870-MBS, 2010 WL 4038736 (D.S.C. Oct. 14, 2010) ("It is well settled that incarceration does not change a prisoner's domicile for purposes of the diversity statute.") (citing Polakoff v. Henderson, 370 F. Supp. 690, 693 (N.D. Ga. 1973); Jones v. Hadican, 552 F.2d 249, 250 (8th Cir.

---

[2] It is not apparent from the Petition whether Plaintiffs and Defendants could be considered citizens of different states. Thus, the Court does not assess whether this is a "statutory interpleader" action and whether the Court thus has jurisdiction pursuant to 28 U.S.C. § 1335.

1977)). If Dickerson is still a resident of Georgia, she is obviously subject to the jurisdiction of this Court.

Even if she is no longer a resident of Georgia, Dickerson would still be subject to the Court's jurisdiction. The statute giving rise to subject matter jurisdiction in this case, 28 U.S.C. § 1331, is silent as to service of process. Thus, the Court must assess personal jurisdiction of a nonresident under the long-arm statute of the Court's forum state, Georgia. See Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990). In such instance, for a nonresident defendant to be subject to a federal court's personal jurisdiction, "the exercise of jurisdiction must (1) be appropriate under the [forum state's] long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257–58 (11th Cir. 2010) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009)). The Georgia long-arm statute, O.C.G.A. § 9-10-91, does not grant jurisdiction that is "coextensive with procedural due process," and "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." Id. at 1259 (citing Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, Iowa, 620 S.E.2d 352 (Ga. 2005)). As such, the Court must apply the "specific limitations and requirements of O.C.G.A. § 9-10-91 literally and must engage in a statutory examination that is independent of, and distinct from, the constitutional analysis to ensure that both, separate prongs of the jurisdictional inquiry are satisfied." Id. at 1263.

Georgia's long-arm statute provides, in relevant part:

A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the

> same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
>
> (1) Transacts any business within this state; [or]
> . . .
> (4) Owns, uses, or possesses any real property situated within this state. . . .

O.C.G.A. § 9–10–91. Dickerson owned the property in Chatham County, Georgia, that was the subject of the foreclosure sale. Moreover, this interpleader action "arises out of" that ownership as it seeks to dispose of the proceeds of the sale of the property. Further, Dickerson transacted business in Georgia within the meaning of the long-arm statute by borrowing money from Joseph Addison, a Chatham County resident, purchasing real property located in Chatham County, and executing the promissory note to be recorded in Chatham County. See Georgia Receivables, Inc. v. Murray, 448 S.E.2d 783, 784 (Ga. App. 1994) ("If defendant executed a promissory note in the county where this suit was filed, the fact that he subsequently moved to Florida would not preclude the trial court's exercise of personal jurisdiction over defendant pursuant to the provisions of Georgia's Long Arm Statute, OCGA § 9–10–91.") (quotations and alterations removed); Davis v. Peoples Bank of St. Marys, 308 S.E.2d 871 (Ga. App. 1983) (where defendant executed note in county where suit thereon was filed and where, at time he executed note, he was resident of that county, trial court was authorized to exercise personal jurisdiction over him pursuant to provisions of long-arm statute).

Moreover, subjecting Dickerson to suit in this Court comports with due process. The Due Process Clause of the Fourteenth Amendment allows for two types of personal jurisdiction, "general" and "specific" personal jurisdiction. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923–24 (2011). For either general or specific jurisdiction to comport with due process, the defendant must have certain minimum contacts with the state, and "[t]he minimum contacts inquiry focuses on 'the relationship among the defendant, the forum, and the litigation.'

This inquiry ensures that a defendant is haled into court in a forum state based on the defendant's own affiliation with the state, rather than the 'random, fortuitous, or attenuated' contacts it makes by interacting with other persons affiliated with the state." Waite v. All Acquisition Corp., 901 F.3d 1307, 1312 (11th Cir. 2018) (quoting Walden v. Fiore, 571 U.S. 277, 284 (2014)) (internal citations omitted).

In the case at hand, Dickerson is subject to jurisdiction in this Court under either specific or general jurisdiction. General personal jurisdiction arises where "[defendant's] continuous [] operations within a state [are] so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities." Goodyear Dunlop Tires Operations, 564 U.S. at 923–24 (quoting Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement, 326 U.S. 310, 326 (1945) (first alteration in original)). Because general jurisdiction is based upon activity unrelated to a particular cause of action, the "due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction." Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000). Under the more exacting general jurisdiction standard, due process requires that a defendant's "affiliations with the State [be] so 'continuous and systematic' as to render [it] essentially at home in the forum State." Daimler AG v. Bauman, 571 U.S. 117, 139 (2014) (quotation and citation omitted). Dickerson owned property in Georgia, resided within the state, and had extensive dealings in Georgia until she was incarcerated. Thus, despite her incarceration out of state, she is still "at home" in Georgia. Moreover, even absent general jurisdiction, Dickerson's actions—including borrowing money from a Georgia resident, owning property in this state, executing a promissory note to be recorded in Chatham County, and failing to pay her legal obligations—all took place in Georgia and are germane to this action. Thus, her contacts with Georgia are related

8

to this action and warrant the exercise of specific jurisdiction over her.  See Goodyear Dunlop Tires Operations, 564 U.S. at 923–24; see also Helicopteros Nacionales de Colombia, N.A. v. Hall, 466 U.S. 408, 414 nn. 8 & 9 (1984); Cable/Home Commc'n Corp., 902 F.2d at 857 n. 41.

## II.     Liability

Plaintiffs have plausibly stated a claim that invokes the Court's interpleader power. Pursuant to Federal Rule of Civil Procedure 22(a), "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Additionally, 28 U.S.C. § 2361 provides:

> In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court.  Such process and order shall be returnable at such time as the court or judge thereof directs, and shall be addressed to and served by the United States marshals for the respective districts where the claimants reside or may be found.
>
> Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

The verified Petition sets forth a potential dispute over entitlement to excess funds from the foreclosure sale that could subject the Plaintiffs to multiple liability.  Additionally, the Petition and its exhibits aver that Dickerson owes the IRS a balance of $64,169.99, that the IRS recorded two federal tax liens as to that debt, and that the IRS perfected those liens before the Department of Justice perfected the restitution lien.  By failing to respond to the Petition, Dickerson has admitted these allegations.  The IRS tax liens attached to Dickerson's property by operation of law.  26 U.S.C. § 6322.  Additionally, tax liens and liens created by criminal penalties are treated equally by federal law.  See 18 U.S.C. §§ 3613(c), 3663A; United States v. De Cespedes, 603 F. App'x 769, 771 (11th Cir. 2015).  "Because the [federal tax liens] [were] entitled to equal treatment as

9

the [restitution lien], . . . and [were] perfected earlier than the [restitution lien], under the general rule of 'first in time, first in right,' . . . the [tax liens] had priority over the [restitution lien]." De Cespedes, 603 F. App'x at 771 (internal citations omitted) (citing 18 U.S.C. § 3613(c)) (quoting Griswold v. United States, 59 F.3d 1571, 1575 (11th Cir.1995)).  Thus, when considering the verified allegations of the Petition and its attachments, the Government Defendants' Answer and statement of a claim, and Dickerson's lack of a response, it is clear that Dickerson is not entitled to any of the excess proceeds of the sale, and that the Government's tax liens take priority over all other claims.

### III.     Damages

The relief requested by Plaintiffs and the Government Defendants is ascertainable without further proof.  The amount of excess funds has been established by Plaintiffs' allegations and attachments as well as the amount placed into the registry of the Court.  Furthermore, the total balance of the liens as well as the priority of the tax liens over the later-filed liens is evident from the parties' filings and is not realistically subject to dispute.  Additionally, Plaintiffs have established, and the Government Defendants agree, that the Court should exercise its discretion to grant Plaintiffs a reasonable award of attorneys' fees, and the Court finds the requested amount to be more than reasonable.  Thus, the Court need not have a hearing on the appropriate relief.

### CONCLUSION

For the reasons laid out above, the Court **GRANTS** Plaintiffs' Motion to be Discharged from Liability, Dismissed as a Party, and for the Award of Attorney Fees and Costs, (doc. 19), and Plaintiffs' and Government Defendants' Joint Motion for Entry of Default Judgment and for Final Distribution of Excess Funds, (doc. 20).  The Court enters a **DEFAULT JUDGMENT** against Karen Dickerson, and **ORDERS** that Dickerson has no claim or entitlement to the interpleaded

funds.  The Court **DISCHARGES** Plaintiffs from liability as to the interpleaded funds.  The Court awards Plaintiffs **$1,873.93** as distribution of the excess funds for attorneys' fees and costs.[3]  The Clerk shall disburse **$1,873.93** to Plaintiffs, with payment made payable to Alma D. Addison and Terrance Addison as Executors of the Estate of Joseph Addison, Deceased, and delivered to Plaintiffs' counsel.  The Court awards Defendant IRS the remainder of the funds held in escrow, **$39,383.26** plus all interest accrued on the interpleaded funds.  The Clerk shall disburse **$39,383.26** plus all accrued interest to the IRS, with payment made payable to the Department of Treasury and delivered to the Government Defendants' counsel.  The Court **DIRECTS** the Clerk of Court to enter the appropriate judgment and to **CLOSE** this case.

      **SO ORDERED**, this 22nd day of February, 2023.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[3] Plaintiffs and the Government Defendants requested that the interest gained on the interpleaded funds be split between Plaintiffs and the IRS in the same proportion as the principal. (Doc. 20, p. 4.)  However, the Court finds that Plaintiffs should not be awarded interest as part of their attorneys' fee award.  Moreover, splitting the interest gained would prove difficult to administer particularly considering the total interest accrued as of the date of this Order is only approximately $460.62.  Thus, the entirety of the interest shall be disbursed to the IRS.